IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

BRIAN BALLINGER, JENNIFER              )
BALLINGER,                             )
                                       )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )          No. 13-1271
                                       )          JURY TRIAL DEMANDED
WELLS FARGO BANK, N.A., US BANCORP,    )
US BANK NATIONAL ASSOCIATION,          )
CITIGROUP INC., CITIGROUP GLOBAL       )
MARKETS INC., CITIGROUP MORTGAGE       )
LOAN TRUST INC. 2006-WFHE4, MERSCORP   )
HOLDINGS, INC., MORTGAGE ELECTRONIC    )
REGISTRATION SYSTEMS INC.,             )
PATRICE KING, BHAVDIP CHAUHAN,         )
                                       )
                                       )
        Defendants.                    )

---

## COMPLAINT

---

## I.    JURISDICTION AND VENUE

1.      This is an action for damages, declaratory and injunctive relief both preliminary

and permanent, arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO")

18 U.S.C. § 1961. Jurisdiction is invoked pursuant to 28 U.S.C.§ 1331 and 1332.  Diversity

jurisdiction is also invoked pursuant to 28 U.S.C. 1332.  Declaratory and injunctive relief is

authorized pursuant to 28 U.S.C. § 2201 and 2202.  Plaintiff further invokes the pendent

jurisdiction of this Court to hear and determine claims arising under state law, including but not

limited to statutory claims under the Tennessee Consumer Protection act and common law claims

for fraud, intentional misrepresentation, negligent misrepresentation, abuse of process, malicious

prosecution and conspiracy to commit some and/or all the aforementioned torts.  The real property at issue in the lawsuit is located in Gibson County, Tennessee, the conduct at issue was directed at residents of this district and all defendants had substantial contacts with the state of Tennessee and this district and thus vesting jurisdiction in this Court.

2.      Diversity jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332 in that the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and the Plaintiffs and all Defendants are citizens of different states.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) in that the Plaintiff and all Defendants reside and/or conduct business in this District and/or a substantial part, if not all, of the event, acts and/or omissions giving rise to the claim occurred in this District. Venue is also proper in this District pursuant to 18 U.S.C. 1965(a) in that all parties either reside, are found, have an agent, and/or transact his/her/its affairs in this District.

## II.      PARTIES

4.      Plaintiffs, Brian and Jennifer Ballinger, are residents of Gibson County, Tennessee, residing at 107 Riverbirch Lane, Medina, Tennessee 38355.

5.      Defendant, Wells Fargo Bank, N.A. ("WFB") is a federally chartered bank with its main office located in San Francisco, California, and is therefore a resident of the state of California according to the Tennessee Secretary of State. WFB is a national association authorized to transact business in the State of Tennessee with its agent for process being Corporation Service Company located at 2908 Poston Avenue, Nashville Tennessee, 37203. Wells Fargo Home Mortgage (WFHM) is a division of Wells Fargo Bank, N.A., handling WFB's home mortgage business.

6.      Defendant, US Bancorp ("Bancorp") is a financial services holding company headquartered in Minneapolis, Minnesota and incorporated in Delaware. US Bancorp owns and operates US Bank National Association as a federally chartered bank. Upon information and belief US Bancorp can be served with process through its registered agent in Delaware, The Corporation Trust Company, at 1209 Orange Street, Wilmington Delaware, 19801.

7.      Defendant, US Bank National Association ("US Bank") is a federally chartered bank with is principal office located at 800 Nicollet Mall, Minneapolis Minnesota, 55402. Upon information and belief US Bank National Association is owned and operated by US Bancorp.

8.      Defendant, Citigroup Inc. ("Citigroup") is a financial services corporation headquartered in Manhattan, New York and incorporated in Delaware. Citigroup owns and operates both Citigroup Global Markets Inc., and Citigroup Mortgage Loan and Trust Inc. Upon information and belief Citigroup Inc. can be served with process through its registered agent in Delaware, The Corporation Trust Company, at 1209 Orange Street, Wilmington Delaware, 19801.

9.      Defendant, Citigroup Global Markets Inc. ("Citigroup Markets") is a financial services corporation dealing in mortgage backed securities with its principal office located at 388 Greenwich Street, New York, NY, 10013-2375 and incorporated in New York.  Upon information and belief, Citigroup Markets can be served with process through its registered agent, CT Corporation System, 800 Gay Street Ste 2021, Knoxville Tennessee, 37929-9710.

10.     Defendant, Citigroup Mortgage Loan Trust, Inc. ("Citigroup Trust") is a financial services corporation dealing in mortgage back securities incorporated in Delaware. Upon information and belief Citigroup Trust can be served with process through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington Delaware, 19801.

11.     Defendant, MERSCORP Holdings Inc. ("MERSCORP") is a holding company which owns and operates Mortgage Electronic Registration Systems, Inc., with its principal office located at 1818 Library Street Suite 300, Reston Virginia, 20190 and is incorporated in Delaware. Upon information and belief MERSCORP can be served with process through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington Delaware, 19801.

12.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation with its principal office located at 1818 Library Street, Suite 300, Reston, Virginia 20190. Upon information and belief MERS can be served with process through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington Delaware, 19801.

13.     Defendant, Patrice King, upon information and belief, is a current employee of WFB as well as a former employee of Ameritrust Mortgage Company, LLC.  Upon information and belief Patrice King can be served with process at 3317 Atlas Drive, Charlotte North Carolina, 28269-4195.

14.     Defendant Bhavdip Chauhan, upon information and belief, is a current employee of WFB and an employee of MERS. Upon information and belief Bhavdip Chauhan can be served with process at 17211 72nd Avenue N., Osseo Minnesota, 55311-4616.

III.     STATEMENT OF FACTS

15.     On June 29, 2006 Plaintiffs Jennifer Ballinger and Brian Ballinger purchased a home located at 107 River Birch Lane, Gibson County, Medina TN 38355 ('the subject property"). The purchase price of the home in question was $184,000.00. To finance their purchase, Plaintiffs paid $17,000.00 in cash as down payment and executed an Adjustable Rate

Note and Deed of Trust in favor of Ameritrust Mortgage Company, LLC for the $165,600.00 balance of the purchase price.  (A copy of the Note and Deed of Trust are attached hereto as exhibits A and B)

16.    A closing on the transaction was held in the office of attorney Randi Rich in Jackson, Tennessee on June 28, 2006.  At the closing Plaintiffs executed numerous documents and were advised by the closing attorney that they were being provided with copies of all of the documents executed at the closing.   Plaintiffs were in fact provided copies of numerous documents they had executed at the closing.

17.    Pursuant to the instruction on the Adjustable Rate Note executed at the closing, (attached hereto as exhibit C) Plaintiffs were to make monthly payments of $1,237.12 on the note made payable to Ameritrust Mortgage Company and mailed to 14045 Ballantyne Corporate Plaza, Suite 101, Charlotte North Carolina, 28277.  On or about August 1, 2006 Plaintiffs made their first payment of $1,237.12 to Ameritrust Mortgage Company at the aforementioned address.

18.    On or about September 1, 2006 Plaintiffs received a bill from Wells Fargo Home Mortgage ("WFHM"), a division of Defendant WFB, directing that payment on the note on the subject property in the amount of $1,237.12, be made payable to WFB and giving the address information where the letter should be sent .  Plaintiffs were unsure of what to do but concerned about the possibility of defaulting in their note promptly made a payment of $1,237.12 to WHFM as demanded.

19.    On September 18, 2006 Plaintiffs received letter from Colonial Bank ("Colonial") stating that they had not made the required payments on their Note and indicating that they were in default on their Note. (A copy of that letter is attached hereto as exhibit D).   Plaintiffs

immediately contacted Colonial customer service representatives by phone, who informed them that their Note and Deed of Trust had been purchased by Colonial on June 28, 2006 and that payments on the Note for the subject property should be paid to Colonial.  The Plaintiffs advised the Colonial representative that they had made a payment to WFHM as directed by the correspondence they had received from WHFM but were told that WFHM was not the servicer of their Note.

20.     Plaintiffs subsequently contacted WFHM by telephone and informed the representative they spoke to, Latonya, about their communications concerning the payment of the Note with Colonial.  Latonya disputed Colonial's ownership of the Deed of Trust.  Latonya also informed Plaintiffs that WFHM was not the actual owner of the Deed of Trust, but rather only servicing the Note and Deed of Trust for another "investor".  Plaintiffs requested at that time that WFHM provide them with proof of ownership and/or assignment of the Note and Deed of Trust to WFHM, which was not sent.  Latonya told Plaintiffs that she would be making a notation in their account stating that they were refusing to pay.

21.     Latonya also told Plaintiff Jennifer Ballinger that if they failed to make the Note Payments to WFHM as requested, WFHM would report it as a failure to pay and default on the Note which would be reported to all of the major credit reporting agencies.  Plaintiffs were intimidated and coerced by this WFHM representative into believing their credit score would be destroyed if they failed to continue to make the mortgage payments to WFHM as told and, accordingly made the ongoing monthly mortgage payments to WFHM as directed.

22.     Because of the confusion about to whom the payments were to be made, Plaintiffs were subsequently put in touch via telephone with the Loss Mitigation Department of WFHM. These WFHM representatives told Plaintiffs to continue to make monthly payments to WFHM in

the amount of $1.237.12, and the funds would be placed into an "escrow account" until the issue of the ownership of the Note and Deed of Trust could be resolved.

23.     Plaintiffs subsequently made timely monthly payments to WFHM in the amount of $1,237.12, believing that WFHM was trying to resolve the issue of the ownership of the Note and Deed of Trust.

24.     On September 20, 2006 Plaintiff Jennifer Ballinger contacted Ameritrust by telephone, to find out if, and to whom, the Note and the Deed of Trust had been sold.  Plaintiff spoke to Ameritrust representative John, who informed her that the Note and Deed of Trust had been sold to Colonial.

25.     On September 22, 2006 Plaintiffs sent a "qualified written request" to Ameritrust, Colonial, and WFHM requesting all documents pertaining to the Note and Deed of Trust and its assignment.   Plaintiff received a response from Colonial that included a color copy of the original Note, closing documents, including an "allonge" to the Note executed on June 28, 2006 by Defendant Patrice King, as Vice President of Funding for Ameritrust assigning the Note to Colonial (attached hereto as exhibit E).  The Note and the closing documents were exact copies of Note and documents provided to Plaintiffs at the closing, with the addition of the allonge.

26.     In response to the qualified written request, Ameritrust provided a copy of the assignment of the Note and Deed of Trust to Colonial, again signed by Defendant Patrice King and executed on July 8, 2006. (A copy of said document is attached hereto as exhibit F)

27.      WFHM never provided any documentation nor responded to the qualified written request in any form.  Plaintiffs faxed to WFHM copies of the documents Colonial had provided, which showed Colonial as the owner of the Deed of Trust and holder of the Note.

28.     Plaintiffs continued to make payments to WFHM while they were told the account was in review.  On January 23, 2007, Plaintiffs entered into a debt consolidation loan with Fieldstone Mortgage Company ("Fieldstone").  This loan was secured by other real property owned by the Plaintiffs.   Plaintiffs' purpose in entering into the consolidation loan from Fieldstone was to pay off the Note on the subject property.

29.     The Fieldstone loan officer Plaintiffs were working with told Plaintiffs that it would pay the balance of the Note on the subject property to the rightful holder of the Note.  In February 2007, following the disbursement of the proceeds of the consolidation load by Fieldstone, Plaintiffs received a "Release and Satisfaction" of the Note from Colonial, dated January 29, 2007. (A copy of the Release and Satisfaction is attached hereto as exhibit G).

30.     The Release and Satisfaction from Colonial dated January 29, 2007 was sent by Jennifer Ballinger to WFHM evidencing that the loan had been satisfied.  Shortly thereafter Plaintiffs also sent a notice of rescission of their mortgage loan to WFHM. (A copy of the notice of rescission is attached hereto as exhibit H).   However, because of the previous threats to destroy their credit that had been made by WFHM representative Latonya and representatives in the Loss Mitigation department of WFHM, Plaintiffs continued to make regular monthly payments of $1,237.12 to WFHM until they knew the matter had been resolved.

31.     On October 15, 2007 Plaintiffs were told by telephone that they would need to sign a forbearance agreement in order for their payments to continue to go into escrow.  Plaintiffs refused but continued to make the payments to WFHM out of fear that their credit would be destroyed if they did not continue to make the payments until the matter was resolved.

32.     Plaintiffs continued to make regular monthly payments in the full amount due through July 2008.  On August 3, 2008 Plaintiffs received a notice of foreclosure from WFHM and began to receive calls from WFHM representatives wanting to inspect their home.

33.     Plaintiffs contacted WFHM on August 8, 2008 asking to speak with the CEO of the company.  They were transferred to Loss Mitigation, and were told they were eligible for a "408 Settlement Modification" of their loan and that all payments in escrow would be credited towards that settlement.

34.     On August 19, 2008 Plaintiffs received in the mail from WFHM a proposed Loan Modification Agreement.  The Loan Modification Agreement document they received indicated that Plaintiffs agreed to pay WFHM $32,293.76 to settle the matter; Plaintiffs were told that the payments that were being held in the escrow account would be applied to reduce that balance. Plaintiffs signed their copy of the agreement on September 11, 2008, and had both pages notarized. (A copy of this document is attached hereto as exhibit I).  They returned the executed Loan Modification Agreement to WFHM by mail.  They then received a Loan Modification Agreement executed by Lenora Artison, WFHM's Officer, on September 17, 2008. (A copy of this document is attached hereto as exhibit J).

35.     Plaintiffs began making payments in the amount of $1,287.83 monthly to WFHM pursuant to the Loan Modification Agreement.  On October 10, 2008 Plaintiffs were told by a WFHM representative in a telephone conversation that their escrow payments would be applied after their first payment under the new agreement was tendered.  The Plaintiffs began making payments on the modified amount in November 14, 2008 and continued to make payments on the loan modification to WFHM.

36.     Despite making the payments as agreed, the Plaintiffs received a foreclosure notice from attorneys Wilson & Associates, on behalf of WFHM, in March of 2009.  Since they had complied with the terms of the loan modification agreement they contacted WFHM by telephone and informed them of the error.  WFHM subsequently halted foreclosure proceedings.

37.     Plaintiffs continued to make payments, however they again received a letter from Wilson & Associates PLLC on August 19, 2009 informing them that they were in default and that they had been retained by Defendant WFB to initiate foreclosure proceedings.  (A copy of the letter is attached hereto as exhibits K)  On August 28, 2009 the Plaintiffs also received from Wilson & Associates a letter and Notice of Trustee's Sale informing them that the subject property was to be sold at a foreclosure sale. .  (A copy of the letter is attached hereto as exhibit L)

38.     Plaintiffs contacted WFHM after receiving these letters and explained that they were not in default. Subsequently WFHM again halted the foreclosure proceedings.

39.     On August 25, 2009 an Appointment of Successor Trustee document was drafted by Wilson & Associates and executed by Herman John Kennerty, as Vice President of Loan Documentation on behalf of Defendant WFB.  This document was filed with the Gibson County Register of Deeds on September 4, 2009. (A copy of the Appointment of Successor Trustee document is attached hereto as exhibit M).

40.     Plaintiffs aver that this Appointment of Successor Trustee document indicates that Defendant WFB was not the owner of the Note and Deed of Trust but rather was purporting to act as an agent acting on behalf of other named Defendants.

41.     The Appointment of Successor Trustee document indicates that Defendant WFB executed the document acting as attorney in fact for Defendant US Bank National Association as Trustee for Defendant Citigroup Mortgage Loan Trust 2006-WFHE4.

42.     Defendant US Bank National Association is a federally chartered consumer banking and mortgage entity headquartered in Minneapolis, Minnesota and is a wholly owned subsidiary of Defendant US Bancorp.

43.     Defendant Citigroup Mortgage Loan Trust, operates as a purchaser and seller of mortgage backed securities.  Defendant Citigroup Mortgage Loan Trust Inc. is a operated my and is a wholly owned subsidiary of Defendant Citigroup Global Markets Inc.

44      Defendant Citigroup Global Markets Inc. is a brokerage and securities business that provides investment banking for corporate, government and retail clients and is owned and operated by Defendant Citigroup Inc.

45.     Defendant Citigroup Inc. is a multinational financial services corporation offering banking and investment services to consumers, governments, and corporations across the globe. Defendant Citigroup Inc. owns and operates both Defendant Citigroup Global Markets Inc. and Defendant Citigroup Mortgage Loan Trust.

46.      In September of 2009, WFHM informed Plaintiffs by telephone that the issues with the default notices and foreclosure proceedings had occurred because their escrow payments had not been properly applied to their account and that the issue would be resolved.  However, in the process WFHM continued to report late payments to credit agencies and as such damaged the Plaintiffs' credit rating, the preservation of which was the entire purpose of paying WFHM in the first place.

47.     Each time the erroneous foreclosure proceedings were begun, the Plaintiffs would have WFHM employees or agents come on to their property taking pictures and attempting to gain access to the home, causing the Plaintiffs great embarrassment, humiliation, and distress.

48.     On May 10, 2010 Plaintiffs received a call from WFHM telling them they were modifying their interest payment to include forced-placed, property-loss insurance and that at the current monthly payment the modification agreement would be paid in full in November 2010. Plaintiffs at that time notified WFHM that they had insurance on the subject property, but WFHM indicated it was going forward with placing the insurance on the property and charging the Plaintiffs for the insurance.

49.     Plaintiffs continued to make payments and on or about October 6, 2010 called WFHM to ask specific questions about when the Loan Modification Agreement was to be paid in full.  Plaintiff Jennifer Ballinger spoke to a WFHM representative in Customer Service, named Jennifer Osborne, who told her that the Loan Modification Agreement was in the amount of $189,000 not the $32,293.76 as agreed and as reflected in the actual Loan Modification Agreement they had executed.  The Plaintiffs disputed that they owed this and believing it was a mistake requested that Ms. Osborn send them a copy of the Loan Modification Agreement she was referencing.  Ms. Osborne agreed to do so.

50.     On or about October 15, 2010 the Plaintiffs received in the mail from WFHM a copy of an alleged Loan Modification Agreement in the amount of $186,944.09.  (A copy is attached hereto as exhibit N)  The signatures on this document that purported to be the Plaintiffs signatures were clearly forged.  The Plaintiffs subsequently contacted WFHM by telephone and advised the representative with whom they spoke that the signatures on the alleged Loan

Modification Agreement were forgeries.  The representative they spoke to told them the matter would be investigated.

51.     In the meantime, the Plaintiffs continued to make their monthly payments and by their calculations, paid off the validly executed $32,293.76 Loan Modification in November of 2010.  At this point, the Plaintiffs stopped making payments to WFHM because to their knowledge, they owed them nothing more.

52.     The Plaintiffs continued attempting to ascertain what was going on.  In December of 2012, Plaintiffs contacted Defendant MERS, a company that operated as the nominee of Ameritrust to manage their mortgages.  In a telephone conversation with a MERS representative Amanda, the Plaintiffs were told that their mortgage was inactive in the MERS system as of February 2007, around the time Colonial was paid in full, but for some unknown reason was brought back into the system in 2009 by WFHM and was again removed in July of 2011.

53.     On March 10, 2013 Plaintiffs went to the Gibson County Register of Deeds Office to record the Release they had received from Ameritrust/MERS on the Deed of Trust.  While in the Register's office Plaintiffs discovered that an assignment of a Deed of Trust dated February 21, 2012 on the subject property from MERS to WFHM signed by Defendant Bhavdip Chauhan who appears to be or have been employed by both MERS and WFHM.  (A copy of which is attached hereto as exhibit O)

54.     In April of 2013, WFHM sent the Plaintiffs copies of the releases they had filed along with an Affidavit of Erroneous Filing which attempted to establish that their releases were invalid. (A copy of which is attached hereto as exhibit P).

55.     On May 10, 2013 WFHM sent the Plaintiffs another Loan Modification Agreement which WFHM claims that the Plaintiffs executed. (A copy of which is attached hereto

as exhibit Q).  Plaintiffs aver that this document was fabricated by agents of WFHM by copying the second page of the Loan Modification Agreement that the Plaintiffs had actually signed and attaching it to a new first page which indicated that the Plaintiffs had agreed to pay $169,017.74 instead of the $32,293.76 that they had actually agreed to pay.

56.     Plaintiffs continued to investigate, and sought the assistance of West Tennessee Legal Services, Inc., ("WTLS") in Jackson, Tennessee.  Mark White, a paralegal at WTLS corresponded with WFHM representatives by mail, and at his request Jerry L. Nickell, Executive Mortgage Specialist with WFHM, faxed documents to him regarding WFHM's alleged claim to the Note and Deed of Trust.  Mr. Nickell sent White a copy of the Adjustable Rate Note they had executed at the closing on the subject property, however this copy had attached to it an allonge assigning the Note to Wells Fargo, rather than Colonial Bank. (A copy of this document is attached hereto as exhibit R).  This second allonge bore the signature of Defendant Patrice King, as Vice President of Funding for Ameritrust Mortgage Company, LLC.  Plaintiffs had not been provided a copy of this allonge at the closing.  Moreover, during seven years of correspondence, telephone calls, and multiple qualified written requests for documents WFHM never produced this document for the Plaintiffs.  Plaintiffs aver that this document was fraudulently created by WFHM and/or fraudulently and/or negligently assigned by MERS to Wells Fargo to give the appearance that their Note and Deed of Trust had been assigned by Ameritrust to WFHM.

57.     Plaintiffs aver that throughout the course of their dealings with Defendants acting individually and/or conspiring with each other, through their employees, agents and/or representatives through the use of acts of fraud, deception and deceit intentionally fraudulently concealed their fraud and intent to defraud the Plaintiffs.

58.     Plaintiffs aver that the Defendants have engaged in similar fraudulent practices of forging documents, misleading and deceiving borrowers in relation to their loans in an attempt to illegally further their interests through the use of the U.S. Mail and other means of communication for many years and will continue to do so.

59.     On July 29, 2013 Defendant WFB filed an action against the Plaintiffs for Money Damages, Injunctive and Other Extraordinary Relief Gibson County Chancery Court ("Gibson Complaint"). In the Complaint filed in that action, Defendant WFB alleges money damages, a right to quiet title to Plaintiffs Real Property in their favor, breach of contract, and a right to foreclose on said property amongst other claims.   This lawsuit is based entirely on the aforementioned fraudulent actions and documents of Defendant WFB and the other named Defendants.  WFB bases their claim specifically on the fraudulent February 21, 2012 assignment of a Deed of Trust from MERS to Wells Fargo signed by Defendant Bhavdip Chauhan.

IV.     CAUSES OF ACTION

COUNT I

**VIOLATION OF THE RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1961 *et seq.***

60.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of the Complaint.

61.     Plaintiffs allege that Defendants, all of which are persons within the meaning of RICO, were employed by or associated with and enterprise as defined in 18 U.S.C. 1961(4).

62.     All Defendants, through their employment or association with said enterprise, participated in a pattern of racketeering activity, as defined by 18 U.S.C. § 1341 and 1343. Said racketeering activity constituted a pattern of at least two (2) acts, as defined by 18 U.S.C. § 1961(5).

63.     Defendants violated 18 U.S.C. § 1341 multiple times having devised or intended to devise a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations or promises.  For the purpose of executing such scheme/s or artifice or attempting to do so, all or some of the Defendants used the U.S. Mail or private or commercial interstate carriers in the furtherance of the fraudulent lending scheme.

64.     Defendants violated 18 U.S.C. § 1343 multiple times having devised or intended to devise a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representation or promises transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice.

65.     The multiple violations of 18 U.S.C. § 1341 and 1343 constitute racketeering activity pursuant to 18 U.S.C. 1961 and were and integral part of and essential to the success of the fraudulent scheme.

66.     Defendants knew that the fraudulent scheme could not prevail and/or continue without mailing, providing or transmitting of fraudulent information to Plaintiffs among various Defendants.

67.     The facts demonstrate that the Defendants have formed an association-in-fact.

68.     Defendants have received income, derived directly or indirectly, from the pattern of racketeering activity or used or invested, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or activities of which affect interstate or foreign commerce within the meaning of 18 U.S.C. § 1962(b).

69.     Defendants employed by or associated with enterprise engage in, or the activities of which affect, interstate commerce, have conducted or participated, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

70.     Defendants have conspired to violate the provisions of 18 U.S.C. § 1961(a),(b), and (c).

## COUNT II

### FRAUD AND INTENTIONAL MISREPRESENTATION

71.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of the Complaint.

72.     Defendants acting individually and/or through their agents, employees, nominees, attorneys in fact, trustees and/or other representatives repeatedly forged Plaintiffs signatures on documents, fabricated fraudulent and false documents, falsely caused fraudulent and/or fabricated documents to be recorded the Gibson County Register of Deeds Office all with the intent to defraud the Plaintiffs.

73.     Defendants made statements of a material fact which they knew to be false, with an intent to mislead Plaintiffs, resulting in the fraudulent transfer of funds and attempts to fraudulently and illegally obtain properties owned by Plaintiffs.

74.     Plaintiffs reasonably relied on Defendants misrepresentations to their detriment and as such have suffered damages.

## COUNT III

### FRAUDULENT CONCEALMENT

75.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of the Complaint.

76.     Defendants had a duty to disclose all material facts of the transaction to Plaintiff.

77.     Defendants intentionally concealed and/or intentionally failed to disclose all material facts of the transactions to Plaintiff.

78.     Plaintiff suffered financial injury as a result of Defendants' failure to disclose all relevant facts of the transaction

79.     Defendants took affirmative action to conceal the cause of action from the Plaintiffs.  Defendants also remained silent regarding material facts pertaining to the cause of action and failed to disclose. Defendants also had knowledge of the facts giving rise to the cause of action.

80. Plaintiffs could not have discovered the cause of action despite exercising reasonable care and diligence. The Defendants concealed material facts from the Plaintiff by withholding information and creating devices or artifices to deceive the Plaintiffs.

**COUNT IV**

**NEGLIGENT MISREPRESENTATION**

81.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of the Complaint.

82.     Defendants, in the course of their transactions with Plaintiffs, supplied false information to Plaintiffs who justifiably relied on said false information to their detriment.

83.     Defendants failed to exercise reasonable care or competence in obtaining and communicating this information to Plaintiffs.

84.     Plaintiffs suffered economic harm as a result of the Defendants negligent misrepresentation.

## COUNT V

### CIVIL CONSPIRACY

85.     Plaintiffs incorporate by reference the allegations contained the preceding paragraphs of the Complaint.

86.     Plaintiffs allege that the Defendants combined and acted in concert to deprive Plaintiffs of their property. Defendants acted with common purpose to defraud Plaintiffs.

87.     All Defendants intended to accomplish this common purpose and knew of each other's intent to accomplish this common purpose.

88.     Defendants engaged in one or more overt acts of fraud.

89.     The overt acts of Defendants were in furtherance of their conspiracy and were racketeering activities that directly injured Plaintiffs.

## COUNT VI

### VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT: T.C.A. §§ 47-18-101 et seq.

90.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

91.     Plaintiffs allege that Defendants have engaged in fraudulent and/or deceptive business transactions towards the Plaintiffs and have thereby violated the Tennessee Consumer Protection Act, T.C.A. §47-18-104(b), resulting in damages to Plaintiff. Specifically, but not limited to, Defendants forged documents in an attempt to gain a security interest in Plaintiffs' property and altered original documents executed by Plaintiffs. Defendants also misrepresented and confused the Plaintiffs as to who the servicer of their loan was and misrepresented who owned the Note and Deed of Trust.

## COUNT VII

## MALICIOUS PROSECUTION

92.     Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

93.     Plaintiffs allege that the Defendant, Wells Fargo Bank N.A., has engaged in Malicious Prosecution in filing the Gibson Complaint.

94.     Plaintiffs allege that Wells Fargo lacked probable cause to support the allegations in the Gibson Complaint.

95.     Plaintiffs allege that Wells Fargo knew or should have known through reasonable investigation that they did not possess a valid and legally executed Adjustable Rate Note or a validly and legally assigned Deed of Trust to Plaintiffs' Real Property.

96.     Plaintiffs allege that Wells Fargo knew or should have known through reasonable investigation that they did not possess any valid, legal interest in Plaintiff's Real Property.

97.     Wells Fargo failed to investigate reasonably the facts and circumstances of the allegations against Plaintiffs before filing the Gibson Complaint.

98.     Wells Fargo filed the Gibson Complaint with malice and an improper motive because they knew or should have known that the allegations in the Gibson Complaint were false.

99.     Wells Fargo filed the Gibson Complaint for the improper motive and purpose of intimidating, embarrassing and coercing the Plaintiffs in an effort to recover monetary settlement from Plaintiffs and to illegally seize their Real Property.

100.    Defendant Wells Fargo is liable to the Plaintiffs for the malicious prosecution of the Gibson County Chancery Complaint.

**COUNT VIII**

**ABUSE OF PROCESS**

101.    Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs of this Complaint.

102.    Plaintiffs aver that Wells Fargo filed the Gibson Complaint for the improper motive and purpose of intimidating, embarrassing and coercing Plaintiffs in an effort to recover monetary settlement and to obtain illegal title to Plaintiffs Real Property, for reasons that were clearly false and fraudulent.

103.    Defendant Wells Fargo abused the judicial process by attempting to recover a monetary settlement for an action that was filed based on false allegations.

104.    Defendant Wells Fargo is liable to Plaintiffs for abuse of process in filing and prosecuting the Gibson County Chancery Complaint.

**COUNT IX**

**CONVERSION**

105.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

106.    Plaintiffs allege that the actions of Defendants, in concert, individually and/or through their agents, unlawfully by use of fraud and deceit took/or converted to his/her/its own use certain property of Plaintiffs.

107.    Plaintiffs suffered economic harm and lost control of their property as a result of the Defendants' conduct.

108.    Defendants are liable to Plaintiffs for their damages as shall be proven, resulting from the conversion of Plaintiffs' property.

**COUNT X**

**COMMON LAW UNCONSCIONABILITY**

109.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

110.    Plaintiffs allege that Defendants, in concert, individually and/or through their agents, engaged in conduct and/or received the fruits of conduct so clearly outrageous, oppressive, and of unfair surprise to Plaintiffs, as evidenced in the facts and on the face of purchase documents described herein, as to be both procedurally and substantively unconscionable.  Plaintiffs were misled and were not provided adequate disclosures and therefore lacked a meaningful choice in the contract.   In addition, the terms of the contract are unreasonably harsh as evidenced in this Complaint.

111.    As a result of said Defendants' acts, Plaintiffs suffered direct injury.  Defendants are liable to Plaintiffs for their damages as shall be proven, resulting from such unconscionability.

**VII.    DAMAGES**

112.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as fully set forth herein. As a direct and proximate result of the wrongful, fraudulent, deceitful and illegal activities of the Defendants, as described herein above, the Plaintiffs suffered financial losses and monetary damages. Plaintiffs have suffered emotional distress, embarrassment, humiliation, marital discord, damage to their reputations and inconvenience as a result of Defendants' actions contained herein.

## III.     PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following:

a.     That the Court assume jurisdiction of this cause and set it promptly for hearing;

b.     That a Preliminary and Permanent Injunction be issued restraining and enjoining Defendants, directly or indirectly and their agents and/ or servants, or anyone in concert with them from: selling, transferring, and divesting any of the subject properties;

c.     That Counter-Plaintiffs be granted declaratory relief quieting their title to the subject real property, including but not limited to declaring that the Assignment of Deed of Trust and Affidavit of Erroneous Release Satisfaction or Discharge filed by or on behalf of the Counter-Defendant be declared void.

d.     That Counter-Plaintiffs be granted injunctive relief requiring Counter-Defendants to take any action necessary to quiet Counter-Plaintiffs' title in the subject property and enjoining the Counter-Defendants from taking any further action that will interfere with the Counter-Plaintiffs' right to quiet enjoyment of the subject real property.

e.     That a jury be impaneled to hear the issues in this case pursuant to Rule 38 of the Federal Rules of Civil Procedure and 42 U.S.C. §1981a(c)(1);

f.     That Plaintiff be awarded treble damages pursuant to the Tennessee Consumer Protection Act;

g.     That Plaintiff be awarded treble damages pursuant to 18 U.S.C. §1964(c);

h.      That pursuant to Count I of the Complaint, Violations of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1961 *et seq*., the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00), and that said damages be trebled pursuant to 18 U.S.C. 1964(c);

i.      That pursuant to Count II of the Complaint, Fraud and Intentional Misrepresentation, Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

j.      That pursuant to Count III of the Complaint, Fraudulent Concealment, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

k.      That pursuant to Count IV of the Complaint, Negligent Misrepresentation, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

l.      That pursuant to Count V of the Complaint, Civil Conspiracy, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

m.      That pursuant to Count VI of the Complaint, violation of the Tennessee Consumer Protection Act T.C.A. §§ 47-18-101 *et seq.*, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00) or in the alternative that said damages be trebled pursuant to T.C.A. 47-18-109(a)(3);

n.      That pursuant to Count VII of the Complaint, Malicious Prosecution, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

o.      That pursuant to Count VIII of the Complaint, Abuse of Process, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

p.      That pursuant to Count IX of the Complaint, Conversion, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

q.      That pursuant to Count X of the Complaint, Common Law Unconscionability, the Plaintiffs recover damages to be determined by a jury in an amount not to exceed ONE MILLION DOLLARS ($1,000,000.00) along with punitive damages in an amount not to exceed TEN MILLION DOLLARS ($10,000,000.00);

r.    That the Court order disgorgement of any profits and benefits received or obtained by Defendants through these transactions;

s.    That the Court order all costs of this action, including, without limitation, reasonable attorney's fees pursuant to 18 U.S.C. §1964(c); 15 U.S.C. §1501 *et seq.;* and the Tennessee Consumer Protection Act, TCA§ 47-18-101, *et seq.*; and

t.    That the Court grant all other relief, both equitable and legal, to which Plaintiff is entitled and deemed appropriate by the Court.

Respectfully Submitted,

WEINMAN AND ASSOCIATES

/s/ Michael L. Weinman
Michael L. Weinman, BPR #015074
112 South Liberty Street
P.O. Box 266
Jackson, TN 38302
731-423-5565
mike@weinmanandassoc.com